## DICKIE et al. v. WILSON.

*(District Court, S. D. New York. February 4, 1892.)*

1. CARRIERS—DAMAGE TO CARGO—JAMAICA LOGWOOD—SHORT CUTTINGS—CUSTOM.
   It was proved that, in loading "straight" logwood (*i. e.*, not roots or trunks with branches) in Jamaica, it is not customary to cut any considerable quantity in lengths of less than three feet, such cuttings injuring the value of the cargo. A deduction being claimed by the owners of the cargo of logwood from the freight due the carrier because 72 tons of logwood were delivered so cut short for the purpose of stowing a full cargo, and against the protest of the shippers, but the evidence being inconclusive as to the exact amount of the short cuttings, *held*, that an allowance for 50 tons of short cuttings would be just.

2. COSTS—DECREE FOR LIBELANTS—SUBSTANTIAL VICTORY FOR RESPONDENT.
   Libelants sued for $216 and recovered judgment for $68.59. *Held* that, as respondent was successful on the main issue, the decree should be without costs.

In Admiralty. Suit to recover a balance of freight. Decree for libelants.

*Wing, Shoudy & Putnam*, for libelants.
*Henry D. Hotchkiss*, for respondent.

BROWN, District Judge. A deduction of $216 is claimed by the respondent from the amount of freight due on a cargo of logwood brought to New York from Black river, Jamaica, in March, 1889, by the bark Bluebird, which had been chartered to the respondent for that purpose. It is not alleged that all the logwood shipped was not delivered; but that in stowing the cargo about 72 tons out of a cargo of 436 tons were in pieces less than 3 feet in length, which had been cut from the logs by the stevedore of the ship for the purpose of stowing a full cargo. Freight was to be paid by the ton; and it was the interest, therefore, of the ship to take as full a cargo as possible. The charter, unlike many recent charters, contained no provision against cutting less than in lengths of three feet. There is sufficient proof on behalf of the respondent to show that, on contracts for the sale of logwood in New York, it has long been the custom to make an allowance to the vendee if on delivery more than 5 per cent. is found cut in lengths less than three feet. But the custom between vendee and vendor in New York does not, I think, affect the ship in the performance of a charter in respect to the mode of loading in Jamaica. The question concerns the loading there, and the ship's authority by the custom there to cut logs, and if so, to what extent, for the purpose of compact stowage. The evidence leaves no doubt that some cutting is necessary, and has long been authorized by the custom of that country; and that cutting is much less necessary in taking cargoes of straight logwood, than in taking cargoes consisting more or less of roots, or logs with branches. The latter must be sawed or cut considerably.

I think the weight of evidence on this point is with the respondent, as to the custom at Jamaica. It was well known that cutting any considerable quantity in lengths less than three feet materially diminished the market value of the cargo; and all the witnesses engaged in the trade there testify that there was no need of cutting, and no practice authorizing cutting, in lengths less than three feet in the case of what is called "straight" logwood; and the respondent's witnesses say this cargo was all of first-class straight logwood. The mate says that there were some roots and branches which they had to cut. But his testimony is too indefinite and insufficient to account for so considerable an amount of short cuttings as was made in this case; and the ship-masters that were examined there had too little experience, or were also too indefinite in their testimony, to overcome the evidence of the respondent's witnesses. During the loading repeated objection to the sawing of the wood in short pieces was made by the shippers to the captain and mate.

The failure, however, to ascertain, during the discharge of the ship, the true amount of short cuttings, makes it impossible to decide the case with any accuracy. In the course of the discharge a considerable quantity of short cuttings was noticed and complained of; but no effort was made to separate the short pieces, or to determine their actual number,

until the cargo had been more than half discharged, and removed for consumption. The amount of 72 tons claimed in the answer, is an estimate derived from the proportion of short cuttings observed in what remained of the cargo after more than half had been discharged. But one of the libelants' witnesses testifies very positively that a considerable amount of the shorter pieces during the earlier part of the discharge was allowed to fall down and accumulate in the hold, and was not taken out until the last. This would make the proportion in the last half, or third, of the cargo greater than in the whole cargo. On the other hand, one of the witnesses for the respondent who saw the unloading every day, testifies that in his judgment the proportion of short pieces remained about the same during the whole discharge. Under such circumstances, though I think the respondent is entitled to some offset, it is impossible to say that the amount of 72 tons is really proved; but as some accumulations of small sticks, in dealing in the usual way with a cargo of large and small ones, would naturally arise towards the end, I can only determine the matter as a jury under such circumstances would be obliged to do, and allow such deduction as seems probably just and equitable. I allow, therefore, for 50 tons, at the proved damage of $3 per ton, making $150. Deducting this amount from the amount of unpaid freight, there remains $68.59 for which the libelants may take judgment, with interest; but as the respondent is successful on the main issue in litigation the decree must be without costs.